UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**YOLDARI TEJEDA CORONADO** | Docket No. 25-mj-03388 |

## MOTION FOR RELEASE

The Defendant, Yoldari Tejeda Coronado, hereby moves the Court to schedule a detention hearing and consider releasing him pending trial, subject to pretrial conditions as outlined herein. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). In this case, neither the facts and circumstances of the alleged offense nor Mr. Tejeda's personal characteristics warrant a departure from that important principle.

Counsel for the government assents to the scheduling of a detention hearing but opposes release.

### Procedural History

This court conducted an initial appearance on December 17, 2025, at which time Mr. Tejeda Coronado assented to detention without prejudice. ECF #8. At that time, undersigned counsel noted that the complaint affidavit referenced numerous recordings, which undersigned counsel wished for the opportunity to review prior to moving forward with a detention hearing. The Court thereafter entered an order of detention providing him "the right to return to this Court, regardless of whether there have been changed circumstances, so he may propose a release plan for the Court's consideration." ECF #12.

### The Charged Offense

Mr. Tejeda Coronado stands charged with one count of collection on an extension of credit by extortionate means in violation of 18 U.S.C. § 894. The complaint affidavit alleges generally that the offense arose out of an unconsummated fake stash house robbery investigation. ECF #4-1. In October 2025, Mr. Tejeda Coronado was recruited by a cooperating defendant ("CD-1") to participate in a robbery of a drug stash house and introduced to two undercover ATF agents posing as members of a Mexican drug trafficking organization. Id. at 3-4. The complaint affidavit details numerous statements allegedly made by Mr. Tejeda Coronado evidencing his willingness and capability to participate in such a robbery. Id. at 4-7. Nevertheles, Mr. Tejeda Coronado ultimately declined to participate in the robbery, instead referring CD-1 and the undercover agents to associates. Id. at 8-9.

The would-be robbery was scheduled to take place on November 6, 2025. At that time, two unidentified men arrived at the meeting location, met with the undercover agents, and provided them with three firearms. Id. at 9-10. The unidentified men left the scene, stating they were going to pick up other individuals who would be participating in the robbery; they did not return, leaving the three firearms in the possession of the undercover officers. Id.

Following the aborted robbery, CD-1 reported to law enforcement that Mr. Tejeda Coronado and another individual had contacted him for payment regarding the firearms that had been left behind. Id. at 11. CD-1 reported these communications were threatening in nature. Id. at 12. The complaint affidavit quoted a number of statements allegedly made by Tejeda Coronado to CD-1 during a November 12, 2025 call. The complaint affidavit characterizes the nature of the call as being a demand for CD-1 to make payment to Mr. Tejeda Coronado, noting that Tejeda Coronado "responded he wanted his money" and also stated "I'm bullshit because that's my money." Id. The complaint affidavit concludes by referencing an unrecorded

November 13, 2025 call between CD-1 and Mr. Tejeda Coronado wherein CD-1 offered to get the money to him by November 21st and Mr. Tejeda Coronado agreed to that extension.  Id. at 12-13.

## The Recordings

The government made a discovery production to the defense in early January, which included a number of audio recordings.  As the recordings involve conversations occurring entirely in Spanish, undersigned counsel enlisted the assistance of certified interpreter Carrie Lilley in their translation.  Transcripts of two recordings referenced in the complaint affidavit are attached hereto as exhibits.

The transcripts reveal material differences between the statements described in the complaint affidavit and the audio recordings.  While the complaint affidavit is written in such a way as to leave the reader with the impression that Mr. Tejeda Coronado was demanding to be paid (himself) for the firearms, the transcripts reveal that is not the case.  Mr. Tejeda Coronado was relaying to CD-1 that he had been pressured by the third party for payment as well and that it was CD-1's responsibility to make the payment since he had made the introduction to the Mexicans.  Mr. Tejeda Coronado was quite explicit about this, stating: "Clarifying bro, the, the money for the kid that is after me. You understand me."  See Exhibit 1 (11/12/25, New Recording 31, Duration 00:18:19) at p. 13.

Moreover, the audio recording of the phone call described in paragraphs 48-49 of the complaint affidavit establishes that a number of the statements attributed to Mr. Tejeda Coronado were in fact made by a third party—i.e., the owner of the guns who was demanding payment.  Again, the recording is clear and unmistakable on this point as well.  The phone appears to be on

speakerphone and Mr. Tejeda Coronado explicitly informs CD-1 of the presence of the third party: "I'm here with the owner of that." See Exhibit 2 (11/12/25, Duration 00:02:47) at p. 2. It is that unidentified individual who makes the statement about wanting his money, not Mr. Tejeda Coronado. Similarly, it is the third party who makes the statement quoted in the complaint affidavit about being "bullshit because that's my money."[1] See id. at 3.

## Argument & Release Plan

As outlined above, the government's evidence as to the alleged extortion appears to be materially different than advanced in the complaint affidavit. Mr. Tejeda Coronado has no prior convictions and is a longtime resident of the area with substantial ties to the community.[2] As such, he maintains that the government cannot meet its burden of establishing that no conditions of release are appropriate.

Mr. Tejeda Coronado has been interviewed by the probation office and a bail report is expected to be available upon the Court's scheduling of a hearing. Mr. Tejeda Coronado proposes to live with the mother of his children, Ashley Mercedes, in Lowell. Alternatively, Mr. Tejeda Coronado has an alternative residence available to him at his mother's apartment in Roxbury, where they have lived for a number of years. He will agree to execute an unsecured bond, surrender his passport, limit his travel to Massachusetts, seek employment, report to pretrial services as directed, and to refrain from communication with any potential witnesses identified by the government. To the extent the Court may wish to impose a curfew and/or electronic monitoring, Mr. Tejeda Coronado stands willing to accept such conditions as well.

---

[1] The attached transcript translates the unidentified third party's statement as "so I'm pissed because my money is there."
[2] The Defendant has an open criminal matter in the West Roxbury District Court dating back to 2023 alleging firearms possession for which he has regularly appeared as required.

## Conclusion

For all the foregoing reasons, Yoldari Tejeda Coronado requests that the Court schedule a detention hearing at the Court's earliest convenience and release on the conditions proposed herein, or such other conditions as the Court deems appropriate.

Respectfully Submitted,
YOLDARI TEJEDA CORONADO
By his attorney,
*/s/ Scott Lauer*
Scott Lauer (BBO #667807)
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
Scott_Lauer@fd.org

## Certificate of Service

I, Scott Lauer hereby certify that this motion and attached exhibits was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: February 6, 2026                                    */s/ Scott Lauer*
                                                          Scott Lauer